IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LOWELL HARRISON,

        Plaintiff,

v.                                                            CIVIL ACTION NO.   3:13-19944

PNC BANK, NATIONAL ASOCIATION,
as successor to the lender
NATIONAL CITY BANK, and
JOHN DOE HOLDER,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant PNC Bank, National Association (PNC)'s Motion for Summary Judgment. ECF No. 43.   For the following reasons, the Court **GRANTS, IN PART,** and **DENIES, IN PART**, PNC's motion.

In this action, Plaintiff Lowell Harrison alleges that PNC's predecessor in interest, National City Bank, misrepresented the value of his house and intentionally inflated the amount of his income in order to induce him into mortgage loans which exceeded his monthly income. Plaintiff further asserts that PNC engaged in illegal debt collection and refused to tell him who held his loan.   As a result, Plaintiff alleges claims for: (1) Count 1 – Unconscionable Contract; (2) Count II – Fraud; (3) Count III – Unlawful Debt Collection; and (4) Count IV – Refusal to Identify the Holder.   PNC moved to dismiss each of these counts, but the Court denied the motion by

Order entered on March 31, 2014. Discovery followed, and PNC now moves for summary judgment on each of Plaintiff's claims.

PNC first argues that Plaintiff's claims under the West Virginia Consumer Credit and Protection Act (WVCCPA) in Counts I, III, and IV cannot be maintained because the relationship between the parties is governed by Ohio law, not West Virginia law. As the Court's jurisdiction over this action is based upon diversity, the Court must apply the conflict of laws analysis of the forum state, which is West Virginia. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938); *Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 782 (4th Cir. 2012) (holding that law of forum state applies in diversity cases). Under West Virginia law, the Supreme Court of Appeals of the State of West Virginia has stated that in contract cases:

> "Our traditional contract conflict rule gives substantial deference to the state where the contract is made and where it is to be performed, assuming both incidents occurred in the same state. This rule is subject to two qualifications: (1) that the parties have not made a choice of applicable law in the contract itself; and (2) the law of the other state does not offend our public policy."

Syl. Pt. 3, *Joy v. Chessie Employees Fed. Credit Union*, 411 S.E.2d 261 (W. Va. 1991) (quoting *Lee v. Saliga*, 373 S.E.2d 345, 351 (1988)).

PNC asserts that the loans at issue in this matter were entered into in Ohio and were performed in Ohio. In addition, PNC states that the Notes provide that "[Plaintiff's] application for this loan, [National City's] decision to make this Loan and the disbursement of all proceeds were made in Ohio," and the Notes require that "all notices and payments . . . must be sent to" Ohio. *Mem. in Sup. of PNC Bank, Nat. Assoc.'s Mot. for Sum. J.*, at 6 (internal quotations and

citations omitted; ECF No. 44). The Notes also contain a choice-of-law provision selecting Ohio law. PNC argues these facts undoubtedly result in the application of Ohio law.

On the other hand, Plaintiff asserts that West Virginia law applies because his claims in Counts I, III, and IV sound in tort rather than contract law. Under West Virginia's conflict of law analysis for tort-based claims, the doctrine of *lex loci delicti* applies. Thus, Plaintiff claims that West Virginia law applies because there is no dispute the injury to Plaintiff occurred in West Virginia. Specifically, with respect to Count I for Unconscionable Contract, Plaintiff alleges that PNC misrepresented the value of his property located in West Virginia and the amount of his income which he receives in West Virginia. Largely as a result of his inability to make payments on the loan, Plaintiff states he filed for bankruptcy in West Virginia in 2004. In addition, the loan is secured by a Deed of Trust in West Virginia and, if he loses his house, the foreclosure sale will be in West Virginia.

Although the Court agrees that Plaintiff may suffer, or may have suffered, harm in West Virginia, Plaintiff cites no authority in support of his position that his claim for "Unconscionable Contract" is a tort claim. Clearly, it is a contract claim. In *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640 (W. Va. 2012), the West Virginia Supreme Court "recognized 'unconscionability' to be a 'general contract principle, based in equity.'" 737 S.E.2d at 656 (quoting *Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 859 (W. Va. 1998), *overruled, in part, on other grounds*, *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550 (W. Va. 2012)). In deciding whether a contract term is unconscionable, "[a]n analysis . . . necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the

contract as a whole." Syl. Pt. 6, in part, *Kirby v. Lion Enterprises, Inc.*, 756 S.E.2d 493 (W. Va. 2014) (citations omitted). When there exists "an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." Syl. Pt. 5, in part, *id.* (internal quotation marks and citations omitted). In Count I, Plaintiff alleges his contract is unconscionable based upon the fact he was an unsophisticated and vulnerable consumer who entered a contract with unfair terms in which the value of his home and his income were misrepresented by PNC. However, there is nothing about these allegations which convert Plaintiff's action into a tort claim. Thus, the Court rejects Plaintiff's argument that the Court should apply a conflict of law analysis for a tort.

Plaintiff further asserts, that if the Court applies the contract conflict rule, it still should apply West Virginia law because Ohio law offends West Virginia public policy against unconscionable credit agreements. However, Plaintiff fails to indicate how Ohio law offends this policy other than stating that West Virginia has an interest in protecting consumers from unconscionable contracts. In fact, in footnote 2, Plaintiff states that, if West Virginia law does not apply, his claim cannot be dismissed because he has sufficiently stated a claim of Unconscionable Contract under Ohio law. *Pl.'s Mem. of Law in Resp. to Def.'s Mot. for Summ. J.*, at 10 n.2. Thus, Plaintiff recognizes that a cause of action exists under Ohio law. The mere fact West Virginia has an interest in protecting consumers does not demonstrate that the application of Ohio law is "contrary to pure morals or abstract justice, or . . . enforcement would be of evil example and harmful to its own people,"[1] under the facts of this case.

---

[1] *Nader v. Liberty Mut. Fire Ins. Co.*, 424 S.E.2d 256, 265 (W. Va. 1992) (citing 16 Am.Jur.2d *Conflict of Laws* § 18).

Similarly, Plaintiff argues that applying Ohio law would offend West Virginia's public policy that actions affecting interests in land should be brought in the county in which the property is situated. In support, Plaintiff cites West Virginia Code § 56-1-1(a)(3) and *Ray v. Hey*, 396 S.E.2d 702 (W. Va. 1990). However, § 56-1-1(a)(3) is West Virginia's general venue statute and the West Virginia Supreme Court applied that statute *Ray* in deciding that venue is proper in the county in which the land is located that is subject to an injunction action to stop the sale of that land. 396 S.E.2d at 706. Plaintiff fails to explain how these authorities mandate that West Virginia law, as opposed to Ohio law, applies to Plaintiff's claim for Unconscionable Contract. Thus, the Court also rejects this argument.

In further support of its position that Ohio law applies, Defendant relies upon the analysis set forth by the West Virginia Supreme Court in *Joy*. In *Joy*, the plaintiffs owned some land in Mineral County, West Virginia, and used it as security to obtain a loan in Maryland from the defendant credit union. 411 S.E.2d at 262. The plaintiffs also executed a deed of trust in Maryland. *Id*. After the plaintiffs fell behind on their payments, the defendant started foreclosure proceedings. *Id*. The property was sold below its appraised value. *Id*.

On certified questions, the West Virginia Supreme Court affirmed the lower court's decision that Maryland law controlled the note and loan agreement, which "was used to finance a business—not to the improve real property." *Id*. at 265. In doing so, the West Virginia Supreme Court rejected the plaintiffs' argument that West Virginia law always should apply when a West Virginia consumer is involved. *Id*. In addition, the West Virginia Supreme Court rejected the plaintiffs' argument under conflicts of law principles, recognizing that the plaintiffs "*went to*

*Maryland* and *contracted for a loan with a credit union located in Maryland, the payments on which were to be made in Maryland.*" *Id*. (italics original). Similarly, in this case, PNC argues that the loans were entered into in Ohio, the proceeds were disbursed in Ohio, and all payments were made in Ohio. Thus, PNC asserts it is very clear Ohio law applies.

Plaintiff argues that *Joy* is distinguishable from this case because his loan was discharged in Chapter 7 bankruptcy, but the security interest was not. In *Joy*, the West Virginia Supreme Court specifically stated that, although Maryland law controlled the loan agreement, "[t]he court below found, and no one disputes, that West Virginia law applies to the deed of trust in question . . . [and] the circuit court's decision properly protects our jurisdiction over issues involving property located in West Virginia." 411 S.E.2d at 265. Plaintiff asserts that the security instrument, which is governed by West Virginia law, is not enforceable because of unconscionability and fraud. In addition, Plaintiff asserts that the loan in *Joy* was obtained for a business purpose, which made the WVCCPA inapplicable to the transaction.[2] On the other hand, Plaintiff states he used the loan proceeds to payoff prior indebtedness on the property. In addition, Plaintiff argues that if the loan agreement is not enforceable due to unconscionability and fraud, then the choice of law provision in the contract applying Ohio law also cannot be enforced.

However, Plaintiff alleges in Count I that the "loan . . . was unconscionable," not the deed of trust. *Compl.*, at ¶32. For the reasons stated above, it is clear that Ohio law controls

---

[2] In support of its position, Plaintiff cites *Bennett v. Skyline Corp.*, Civ. Act. No. 1:14CV129, 2014 WL 4966462 (N.D. W. Va. Oct. 3, 2014), which found *Joy* distinguishable because the loan in *Joy* was used to finance a business and the loan in *Bennett* was used to improve real property. 2014 WL 4966462, at *14. However, this case is unlike *Bennett* because the loan was not used to improve real property.

-6-

whether or not the loan was unconscionable. Thus, the Court **GRANTS, IN PART,** PNC's Motion for Summary Judgment as to Count I to the extent it seeks relief under the WVCCPA and West Virginia law. However, to the extent Plaintiff may have a claim under Ohio law, the claim survives.

Turning next to Count III for Unlawful Debt Collection in violation of West Virginia Code § 46A-2-128(e) and Count IV for Refusal to Identify the Holder in violation of West Virginia Code § 46A-2-127(c), PNC argues that Plaintiff cannot maintain these claims because he is not a "consumer" within the meaning of West Virginia Code § 46A-2-122 of the WVCCPA because his debt was discharged in Chapter 7 bankruptcy on July 12, 2004. For purposes of the violations alleged in Counts III and IV, the WVCCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122(a);[3] *see Fleet v. Webber Springs Owners Ass'n, Inc.*, No. 14-0637, 2015 WL 1880224 (Apr. 23, 2015) (stating "for purposes of the unfair debt collection provisions of the WVCCPA, the term 'consumer' is broadly defined" in W. Va.Code § 46A–2–122(a)). Although Plaintiff's personal liability for the debt was discharged in bankruptcy, he states that PNC treated him "as though he was obligated to pay on the loan by repeatedly sending him solicitations to pay on the loan and asserting amounts due." *Pl.'s Mem. of Law in Resp. to Def's Mot. for Sum. J.*, at 11. In addition, Plaintiff asserts PNC threatened to foreclose on his house, which is considered "a method of collecting a debt by acquiring and selling secured property to satisfy a debt," and demonstrates PNC's efforts to collect

---

[3]West Virginia Code § 46A-2-122 provides, in part: "For the purposes of this section and sections one hundred twenty-three, one hundred twenty-four, one hundred twenty-five, one hundred twenty-six, one hundred twenty-seven, one hundred twenty-eight, one hundred twenty-nine, and one hundred twenty-nine-a of this article, the following terms shall have the following meanings: (a) 'Consumer' means any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122(a), in part.

an alleged obligation by Plaintiff. *Id*. (citing *Wilson v. Draper & Goldber, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (internal quotation marks omitted)). However, the purported collection letters and monthly loan statements Plaintiff attached to his Response contain a provision stating that, if the debt was discharged in bankruptcy, PNC is not attempting to collect a personal debt, but it may exercise its rights against the property. Thus, in these letters and statements, PNC disavows it is attempting to collect a personal debt from Plaintiff.

This provision makes this case directly comparable to *Fabian v. Home Loan Center*, No. 5:14-CV-42, 2014 WL 1648289 (N.D. W. Va. Apr. 24, 2014), in which the District Court held the plaintiff was not a "consumer" within the meaning of West Virginia Code § 46A-2-122(a) because the lender's letters provided that the plaintiff had no personal obligation to repay the loan because his debt was discharged in bankruptcy. 2014 WL 1648289, at *6. As the plaintiff was not a consumer, the District Court concluded that the plaintiff lacked standing to bring a WVCCPA claim and dismissed it. *Id*. Similarly, the exhibits submitted by Plaintiff in this case provide that he is not personally obligated to repay the debt if it was discharged in bankruptcy.

The fact Plaintiff in this case was sent letters and statements which disavowed they were attempts to collect a personal debt as a result of Plaintiff's bankruptcy also makes this case distinguishable from *McGuire v. Jim Walter Homes, LLC*, No. 5:14-cv-14299, 2014 WL 5149725, (S.D. W. Va. Oct. 14, 2014). In *McGuire*, although the lender produced mailings stating the borrowers did not owe any money if the borrowers' debt was discharged in bankruptcy, the borrowers also alleged they received up to four to five phone calls a day demanding payment post-bankruptcy. 2014 WL 5149725, at *7. Finding the WVCCPA encompasses debt collectors'

phone calls, the court concluded there was a genuine issue of material fact as to whether lender demanded payment from the borrower after the bankruptcy had closed. *Id*.

Similarly, in *Croye v. Greenpoint Mortgage Funding, Inc.*, 740 F. Supp.2d 788 (S.D. W. Va. 2010), the court found a question of fact existed because the ex-husband of the borrower asserted the lender called him over thirty times in an effort to collect on the loans, despite the fact he never signed the notes and had filed bankruptcy. 740 F. Supp.2d at 797.[4] The court found these repeated calls "suggest[ed] the existence of an alleged obligation . . . to pay the loans." *Id*. Thus, the court denied the lenders motion for summary judgment for illegal debt collection. *Id.* at 798.

To the contrary, in this case, Plaintiff has not made any allegation PNC called him, and the letters and statements sent to him provide, if the debt was discharged in bankruptcy, PNC was not attempting to collect a personal debt. Thus, unlike *McGuire* and *Croyle*, the Court finds in this case there is no genuine issue of material fact that PNC was attempting to collect a debt. Accordingly, the Court finds that he is not a "consumer" within the meaning of West Virginia Code § 46A-2-122(a) as he was not personally obligated to pay the debt and there was no alleged obligation to pay the debt by virtue of the letters and statements. Therefore, the Court **GRANTS** summary judgment in favor of PNC as to Counts III and IV.[5]

---

[4]The ex-husband of the borrower had an interest in the property that was the security for the mortgage notes executed by the ex-wife. *Id*. at 790-93.

[5]As with his Unconscionable Contract claim, Plaintiff also argues that his WVCCPA claims for Unlawful Debt Collection and Refusal to Identify the Holder are tort like claims governed by West Virginia law under a conflicts of law analysis. The Court need not address this argument because PNC is entitled to summary judgment on other grounds.

PNC also argues that Count II for fraud is barred by the two-year statute of limitations for such claims. Plaintiff asserts, however, that his claim was timely filed under the discovery rule, which provides that the statute of limitations does not begin to run until after he "knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action" Syl. Pt. 5, in part, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009) (citation omitted). Specifically, Plaintiff argues he did not know, nor through the exercise of reasonable diligence should have known, that he was defrauded until May of 2012 when he had a retrospective appraisal of his house. On the other hand, PNC insists that there were a number of alleged facts which indicate Plaintiff should have known about any alleged fraudulent conduct prior to the date of his bankruptcy discharge. Upon review, the Court finds that there exists a genuine issue of material fact which is best reserved for trial. Therefore, the Court **DENIES** PNC's motion for summary judgment as to Count II.[6]

Lastly, PNC argues that Plaintiff's unconscionable contract and fraud claims are barred by the doctrine of judicial estoppel because he did not list these potential claims as assets on his bankruptcy petition. Thus, PNC insists that Plaintiff's claims in this matter are entirely inconsistent with the position he took during his bankruptcy proceedings. Plaintiff responds that as soon as he became aware of his claims, he amended his bankruptcy schedules to inform the trustee and the creditors of the claims and the bankruptcy court allowed the claims to proceed. Thus, the bankruptcy court did not accept any prior inconsistent statements. Although PNC replies by arguing the claims are barred because Plaintiff knew the factual predicate for his claims

---

[6]The Court holds in abeyance PNC's argument regarding the last scheduled payment accelerating the debt.

and had a motive to conceal them, the Court finds that it is a factual issue and ill-suited for summary judgment. Therefore, the Court **DENIES** PNC's motion for summary judgment with respect to Counts I and II on judical estoppel grounds.

Accordingly, for the foregoing reasons, the Court **GRANTS, IN PART,** PNC's Motion for Summary Judgment to the extent Plaintiff seeks relief under the WVCCPA in Count I, **GRANTS** the motion as to Counts III and IV, and **DENIES** the motion as to Count II.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

    ENTER:    May 8, 2015

    _____
    ROBERT C. CHAMBERS, CHIEF JUDGE